IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:19-CV-23034-JLK/BECERRA

LEXINGTON INSURANCE COMPANY a/s/o
BEACH BEAUTY, INC., d/b/a BEACH BODY,

    Plaintiff,

v.

DEAUVILLE ASSOCIATES, LLC d/b/a
DEAUVILLE BEACH RESORTS,
TRANE U.S., INC., and
TIRONE ELECTRIC, INC.,

    Defendants.
_____/

TRANE U.S., INC.,

    Cross-Claimant,

v.

DEAUVILLE ASSOCIATE S, LLC d/b/a
DEAUVILLE BEACH RESORTS, and
TIRONE ELECTRIC, INC.

    Cross-Defendants.
_____/

TRANE U.S., INC.,

    Third-Party Plaintiff,

v.

EDD HELMS AIR CONDITIONING, INC.
and EDD HELMS ELECTRIC, LLC,

    Third-Party Defendants,
_____/

## ORDER DENYING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS TRANE'S THIRD-PARTY COMPLAINT

THIS MATTER is before the Court upon Third-Party Defendants' Motion to Dismiss (DE 84) (the "Motion"), filed March 7, 2022. The Court has also considered Third-Party Plaintiff Trane's Response (DE 93), filed April 1, 2022. Third-Party Defendants did not file a reply and the time to do so has expired. Upon careful consideration of the pleadings and the record, the Motion is DENIED for the reasons stated herein.

### I.     BACKGROUND

On July 22, 2019, Plaintiff Lexington Insurance Company filed the underlying lawsuit alleging negligence and breach of contract stemming from an electric surge and fire that occurred at the Deauville Beach Resort's Hotel in Miami Beach. DE 1. Plaintiff Lexington alleges it has a right of subrogation because it made a payment to its insured, Beach Beauty (a gym and tenant of Defendant Deauville which had to close after the fire). *See* Third Am. Compl., DE 67 ¶¶ 8, 29, 31–33. Plaintiff Lexington sues Defendants Deauville, Trane, and Tirone for damages caused by the fire. As alleged in the Third Amended Complaint, Plaintiff Lexington hired Trane for installation of a chiller and transformer. *Id.* ¶ 15. Trane then hired Edd Helms as a subcontractor to assist in the electrical services. *Id.* ¶ 18. Plaintiff Lexington did not name as Defendants any of the following: Edd Helms, Edd Helms Air Conditioning, LLC ("EH Air") or Edd Helms Electric, LLC ("EH Electric").

On January 26, 2022, Trane filed a Third-Party Complaint against EH Air and EH Electric. DE 77. The Third-Party Complaint alleges four separate counts: Contractual Indemnity against EH Air (Count I), Common Law Indemnity against EH Air (Count II), Contractual Indemnity against EH Electric (Count III), and Common Law Indemnity against EH Electric (Count IV).

Trane alleges in its Third-Party Complaint that on July 8, 2017, Trane was contacted by Deauville ("Hotel") to rent a temporary chiller ("chiller") and temporary transformer ("transformer") to provide cooling. DE 77 ¶ 7. On July 11, 2017, the Hotel and Trane entered into a contract. *Id.* ¶ 8. Pursuant to this contract, Trane delivered a chiller and a transformer to the Hotel, but Trane did not provide any engineering or professional services; the only labor in the contract was "start-up." *Id.* ¶¶ 9–11. Machin Mechanical Service, a non-party electrical contractor, allegedly installed the chiller and transformer. *Id.* ¶ 12. A few days later, the Hotel reportedly observed smoke inside one of the electrical rooms. *Id.* ¶ 13. On July 19, 2017, Trane hired EH Air as its subcontractor to investigate, pursuant to a "Master Construction Subcontract" that was previously entered into between EH Air and Trane on August 22, 2016. *Id.* ¶ 14. EH Air dispatched its sister company, EH Electric, to the Hotel. *Id.* ¶ 15. "On July 19, 2017, Edd Helms replaced the burnt cables connecting the temporary chiller and transformer to Deauville's electrical system with new cables and added additional cables." *Id.* ¶ 16.

On July 21, 2017, Trane alleges a temporary generator ("generator") was delivered to the Hotel to provide additional power, and Trane hired Tirone to connect the chiller and generator. *Id.* ¶ 19. On July 23, 2017, Tirone returned to the Hotel to disconnect the chiller from the generator, and then reconnect the chiller to the transformer. *Id.* ¶ 20. The chiller blew a fuse when it restarted. *Id.* ¶ 21. Tirone replaced the fuse and the chiller restarted without incident. *Id.* On July 25, 2017, a bus duct failed in the Hotel's electrical system, which was not connected to Trane's equipment, causing an electrical arcing event. *Id.* ¶ 22.

On July 24, 2017, Edd Helms issued an invoice and service ticket for the work performed on July 19, 2017. *Id.* ¶ 26. On July 25, 2017, EH Electric executed a work order ("Work Order") under the Master Construction Subcontract, and agreed to be bound by the Master Construction

Subcontract. *Id.* ¶ 27. Trane alleges that pursuant to Section 6.02 of the Master Construction Subcontract, EH Air and EH Electric are contractually obligated to indemnify, defend, and hold harmless Trane. *Id.* ¶¶ 36, 59. To the extent Plaintiff Lexington successfully establishes liability against Trane for the acts or omissions of Edd Helms, Trane alleges that EH Air and EH Electric must indemnify and hold harmless Trane. *Id.* ¶¶ 39, 62. Additionally, because Trane subcontracted with EH Air and EH Electric, the Third-Party Defendants have a common law duty to indemnify Trane for the damages arising from the Third-Party Defendants' work. *Id.* ¶¶ 54, 77.

Third-Party Defendants EH Air and EH Electric filed a Motion to Dismiss Counts I, II, and III pursuant to Federal Rule of Civil Procedure 12(b). *See* Mot.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court must accept the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III. DISCUSSION

The three counts that Third-Party Defendants move to dismiss are Count I (contractual indemnity against EH Air), Count II (common law indemnity against EH Air), and Count III

4

(contractual indemnity against EH Electric). Third-Party Defendants do not move to dismiss Count IV (common law indemnity against EH Electric).

With respect to Counts I and II against Third-Party Defendant EH Air, there is a dispute over who performed the work. Third-Party Defendants state that EH Electric performed the work, not EH Air. Mot. at 5–8. However, Trane alleges that EH Air's sister company, EH Electric, was dispatched to perform the work and that "Edd Helms" performed the work. DE 77 ¶¶ 15–16. The dispute over who performed the work is an issue better addressed at the summary judgment stage, after discovery. Additionally, Third-Party Defendants argue that Count I, contractual indemnity against EH Air, should be dismissed because the invoice and service ticket were issued by EH Electric, not EH Air. Mot. at 6–7.

In its Response, Third-Party Plaintiff Trane argues that the Work Order identifies the subcontractor for the work as "Edd Helms Air Conditioning & Electric." Resp. at 4, citing Ex. 2. Moreover, the Master Construction Subcontract requires EH Air to "indemnify and defend Trane for any claims 'arising out of or resulting from the acts and omissions of Subcontractor, its subcontractors and agents, and their respective employees and agents.'" Resp. at 8, citing Ex. 1. As such, Trane argues that EH Air is responsible for work delegated or subcontracted to EH Electric. *Id.*

To state a claim for common law indemnity in Florida, a party must allege (1) that it is without fault, (2) that another party is at fault, and (3) that a special relationship between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party. *Ermolaev v. Happy Land FL, LLC*, 2021 WL 7084643 *2, (S.D. Fla. May 20, 2021); *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638 (Fla. 1999).

5

Taking as true the allegations in the Third-Party Complaint, and upon considering the exhibits and Plaintiff Lexington's Third Amended Complaint, the Court concludes EH Air may be liable by virtue of common law indemnification. In addition to the factual allegations described above, Trane alleges it "is wholly without fault for the damages and allegations asserted by Lexington in the Third Amended Complaint," that "[t]o the extent that Lexington established that Trane is liable. . . .Trane asserts any and all such liability would be solely due to the negligence and failures of [EH Air]," and that "[a] special relationship existed between Trane and [EH Air] as contractor-subcontractor." DE 77 ¶¶ 50–52, *see also* ¶¶ 34, 39. This, taken together with the factual allegations, is sufficient to state a claim for common law indemnity. *See Guertin v. United Rentals, Inc.*, 2012 WL 4760932 (M.D. Fla. Oct. 5, 2012) (holding the cross-plaintiff's indemnity allegations were sufficient where the cross-plaintiff denied all allegations of wrongdoing, alleged its liability was solely "vicarious or derivative," and that cross-defendant "should bear the complete responsibility" because the injuries were the proximate and direct result of cross-defendant's actions).

The Court next turns to the contractual indemnification claim against EH Air. To determine whether there is a claim for contractual indemnity, "the terms of the agreement will determine whether the indemnitor is obligated to reimburse the indemnitee for a particular claim." *Camp, Desser & McKee, Inc. v. Paul N. Howard Co.*, 853 So. 2d 1072, 1077 (Fla. Dist. Ct. App. 2003) (citing *Dade County School Bd. v. Radio Station WQBA*, 731 So. 2d 638 (Fla. 1999).

The relevant contract, the Master Construction Subcontract, was executed August 2016 between Trane and EH Air. *See* DE 77-2 at 15. "Section 6.02 Indemnity" of the contract reads:

> To the fullest extent permitted by law, Subcontractor shall indemnify, defend, and hold contractor and Customer, and their respective officers, directors, employees, and agents, harmless from any and all claims, actions, costs, expenses, damages and liabilities, including reasonable attorneys'

> fees, resulting from death or bodily injury or any other damages, arising out of or resulting from the acts and omissions of Subcontractor, its subcontractors and agents, and their respective employees and agents. However, Subcontractor shall not be required to indemnify or defend Contractor and Customer against claims, damages, expenses or liabilities to the extent attributable to the sole respective negligence of Contractor and Customer. The duty to indemnify will continue in full force and effect, notwithstanding the expiration or early termination of the Subcontract or any Work Order, with respect to any claims based on facts or conditions which occurred prior to expiration or termination.

DE 77-2 at 8. Upon review of this section and the contract as a whole, the plain language of the agreement supports indemnification. EH Air has a duty to indemnify Trane for Third-Party Defendants' acts and omissions, and for the acts and omissions of Third-Party Defendants' subcontractors, which may include EH Electric. Therefore, the Third-Party Complaint sufficiently alleges contractual indemnity against EH Air.

Next, Third-Party Defendants move to dismiss Count III, contractual indemnity against EH Electric. Specifically, Third-Party Defendants argue that the Work Order executed by EH Electric in this incident does not incorporate the Master Construction Subcontract between Trane and the Third-Party Defendants, and as such the indemnity provisions of the Master Construction Subcontract do not apply. Rather, Third-Party Defendants argue that the Work Order incorporates the "Master Services Subcontract," a different contract. Mot. at 9. However, Third-Party Defendants do not identify what this "Master Services Subcontract" is.

In Response, Trane argues that the Work Order does indeed incorporate the Master Construction Subcontract. Trane points out that the Master Construction Subcontract includes a form "sample work order." Resp. at 13. Trane further argues that the Master Construction Subcontract only requires the Work Order to be "substantially similar" to the "sample work order." *Id.* Aside from the term "Master Services Subcontract," the "sample work order" and the Work Order are nearly identical. *Id.* Moreover, the Third-Party Complaint alleges that the Work Order

7

was issued under the Master Construction Subcontract, and that EH Electric agreed to be bound by the Master Construction Subcontract. DE 77 ¶ 27.

The parties disagree over whether the Work Order incorporates the Master Construction Subcontract. Trane's Third-Party Complaint sufficiently alleges that the Work Order incorporates the Master Construction Subcontract, and thus the indemnification provisions apply. The Court must construe these allegations in a light most favorable to Trane. *Pielage*, 516 F.3d 1282, 1284 (11th Cir. 2008). As such, the Motion to Dismiss is denied.

Accordingly, it is **ORDERED, ADJUDGED and DECREED** as follows:

1. Third-Party Defendants' Motion to Dismiss **(DE 84)** be, and the same is, hereby **DENIED**;

2. Third-Party Defendants **SHALL ANSWER** within **twenty (20)** days of the date of this Order.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida dated this 7th day of June, 2022.

_____
HONORABLE JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record
Magistrate Judge Jacqueline Becerra